and at this time we'll hear Tochin v. County of Nassau. Morning Your Honors. Morning. May it please the Court, William K. Joseph for the appellant, Scott and Heidi Tochin. Your Honors, we are here before you in reference to a decision dated June 18, 2018 by the Honorable Arthur D. Spett of the Eastern District of New York, which granted defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 4M for the failure to serve defendants within the 90 days of March 6, 2016 and denies plaintiff's application to extend time to effectuate service until July 28, 2017. Your Honors, we submit that the decision was an error and in support of our position would submit that while it is undisputed that service was not effectuated until July 28, 2017, the failure to timely serve the defendants was excusable. While Federal— Did you advance good cause? What was the good cause that you advanced to the Court? It was due to the attorney assigned to the cases. There was an issue with the issuance of the summons to begin with. The original summons was filed with the complaint on March 16, 2016, and it was rejected by the clerk. A second summons was submitted to the Court, and the clerk also rejected that, and that was done— October 26th? Correct. Then, on October 27— How many months later? Seven months later? Seven months later. Yes, Your Honor. And a third summons was filed with the clerk on October 27th, and that was accepted on October 28th. It was not served, however, until July 28th. The reasons put forth for the failure to serve the initial summons was—the first was it was not actually signed, so we did not have a proper summons that could be completed and served. The reason for the delay between March and October of 2016 was because of unrelated issues with understaffing in the office and with the attorneys assigned to the case. That's usually not good cause. I understand that, and that's why we had really moved more under the discretionary standard with the four-pronged test as compared to the two-pronged standard. So, let me ask you, during the second period, after the summons was finally approved— Correct. There was a substantial delay, too, but during that time, Mr. Cesari was ill. That is correct. He had to undergo a hernia surgery that necessitated him to be out of the office for two months. So, I was going to ask you, how long was he incapacitated? He was incapacitated from November 10, 2016 to January of 2017. And when was it served? July 28, 2017. Okay. Thank you. And during that time that he was out of the office, there were no other attorneys that were admitted to the federal court, and there was a changeover in the staff so that the file had been mistakenly just placed back into the file room. So, when Mr. Cesari was able to return to the office in January, there was nothing, unfortunately, that activated the case within the firm's computers to indicate that something needed to be done. And as part of the four-pronged— Why do you need a lawyer admitted to federal court in order to effect service? You don't need a lawyer admitted to federal court— Because you don't even need a lawyer. Usually, it's a waste of money to get a lawyer to effect service. That is correct, but the other attorneys that were with the firm at the time did not You don't even have to read the paper in order to serve it. That is correct. It can be a domestic dispute. It can be a contract dispute. It can be anything. So, I don't know why you need a lawyer to do that. You don't need a lawyer, but you would need the lawyer to give the staff instruction, unfortunately, because the staff does not, unfortunately, undertake its own decisions to effectuate work that they're not told to do. And at this time, there was also a change in the staff as well, and it had gone down from five employees to four and then ultimately three. And it wasn't until June of 2017 that they were able to hire additional staff, and unfortunately, it wasn't until the court's notification in July that the case was reactivated within the firm's own system to alert that the service had not been effectuated. In relation to the four-pronged test outlined for the discretionary approval for late service, the first would be whether or not the statute of limitations would unsuit the plaintiff. I don't think that there is any disagreement in this case that that would occur here. And in the event that the incident occurred on or about March 8, 2013, the summons were served on March 6, 2016, leaving just approximately two days within the statute of limitations for the claims asserted. So that prong would go in favor of the plaintiff. Second prong would be whether or not the defendant had actual notice of the claims. We submit, and the county actually provided in their original motion papers, a copy of a notice of claim that was served on them in July of 2014 that fully advised them of the federal 1983 claims that the plaintiff was asserting against the county and the county defendants. It doesn't identify any individual officers, though, right? No, it does not. The third prong would be whether or not the defendants attempted to conceal the defect in service. Obviously, because service was never effectuated to begin with, the county or any of the individually named defendants have failed to appear, so there is no allegation that there was any attempt by the defendants to conceal service or any defects in service. And the fourth would be whether the defendant would be prejudiced by extending the time for service. And given the fact that they were fully aware of the nature of the claims and of the allegations, including the date and the incident, there is no prejudice to be claimed by the county itself in relation to these claims. And so, on that basis, and in his opinion, Judge Spad also did indicate that although not good cause, that that period of time that Mr. Cesari was out due to the unanticipated medical surgery, that that, in effect, was an unanticipated event that could be credited as a good cause showing, albeit the remaining period of time with the failure of the law office in effectuating service would not account. So, based on all of that, we would ask the Court to overturn Judge Spad's decision and grant the plaintiff's application to extend the time for service to be and to include July 20, 2017 for the named defendant. Thank you. You've reserved some time for rebuttal. I did. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. My name is Adam Moss. I am a Deputy County Attorney at the Nassau County Attorney's Office. I am here today on behalf of defendants at police in this matter. Your Honors, as has been discussed, there is only one question that is presented to the Court at this time. Did Judge Spad, in the District Court, abuse his discretion when he ruled to dismiss after a 16-month delay in service from the filing of this case, despite the fact that Rule 4M states that service must be affected within 90 days? Far from this being an abuse of discretion, Judge Spad issued a well-reasoned, clear decision, and he took into account in that decision and weighed the effect on all of the parties from reaching the decision that he did. And in considering whether there is an abuse of discretion where there is a Rule 4M dismissal, as Judge Jacobs is aware from authoring the opinion in the Zapata case, this Court has made clear that it will not find an abuse of discretion ordinarily unless a colorable justification has been offered by plaintiffs. Judge Spad found, and I quote in this case, there has been an absolute lack of any justifiable excuse advanced for the multiple failures to timely serve. And without going into the entire record, I just want to be clear on what Judge Spad looked at when he issued this decision. There was an initial failure to serve within 90 days. The defendants were obviously in the dark about this litigation. After seven months, District Judge Wexler sent, issued an order and asked plaintiffs what's going on with this case? Why hasn't a complaint been served yet? Essentially, plaintiffs had a second bite at the apple at that point, despite all of the prejudice that had accumulated in that six months to the defendants. And general law office failure was offered as the excuse at that time by plaintiffs. And they indicated in a letter that they would, quote, expeditiously serve as soon as plaintiff's counsel just mentioned the summons was corrected and issued. Well, that summons was, after a couple of unsuccessful attempts issued, Mr. Cesari got an ECF alert that the summons was issued, and he had assured the court he would expeditiously serve. And then, lo and behold, another eight months passed. And in that time, service was not affected. And that's really where the issue in this case comes into play. And even making matters worse, Judge Ocas asked plaintiffs to demonstrate why the case should not be dismissed. And a full 10 days passed before service was effectuated at that time. That was 16 months of delays in total at that point. Now, this court, again, pursuant to CEPADA, is well aware that within the district there can be two circumstances where an extension will be granted. One, pursuant to Rule 4M, is where there is good cause. In fact, the district court is required to grant an extension where there is good cause. As appellant's counsel has indicated, an argument that there was good cause was essentially abandoned in the briefing on this case. And that's because law office failure does not constitute good cause, and law office failure is conceded in this case. So, Rule 4M also provides for a discretionary extension, as has been discussed. Now, Judge Spat, amongst the criteria, in addition to the fact that this court looks to determine if there was an abuse of discretion, whether there was a colorable justification offered. And in this case, there was no justification offered. Just a final thought on a colorable excuse advanced, Judge Spat looked to precedent in the Eastern District, and he noted that pursuant to the Naglieri case in the Eastern District, courts in the Eastern District refused to find justifiable excuse when the neglect and inadvertence are unaccompanied by a diligent effort to identify and remedy the service defect quickly. That clearly did not happen here. The other issue that this court looks at in determining whether there is an abuse of discretion is whether the district judge took into account, in a case like this where the statute of limitations would bar refiling, the prejudices that would be visited on the various parties. And Judge Spat took that very seriously. He weighed all of the circumstances. There is a four-part test. And he conceded, and he noted in the opinion, of course there's going to be prejudice to plaintiff here, perhaps more prejudice to the plaintiff, because they won't be able to effectuate their cause of action based on the attorney's mistake in this case. But that's not the only factor considered by the court. There are other factors. One is whether there was a colorable justification. The other factors are actual notice and prejudice. And in this case Were you aware that the lawsuit was coming, though, before the notice of appearance was entered? No. Nobody was aware. First of all, there are John Doe officers who, to this date, have not been substituted into this action. And we're now on six years. It would have been Detective Archbold, right? She was the only one at the scene, right? She was the only one, but none of the other officers were involved in this case. The only person who testified against her, she was off-duty at that time. She was the complainant in this case. She wasn't the arresting officer. He was arrested for choking her, right? That's correct, Your Honor. Did she testify at the criminal trial? The records in the criminal trial, as far as the county understands, are under seal. The county, and that was one of the issues that Judge Spatz said, would prejudice the county in this case, even though the prejudice to the county was slight. The notice of claim didn't come into the county until after the trial. So they would be limited in terms of their investigation at whatever happened in the criminal action. After the criminal trial. That's right. The notice of claim came after. The notice of claim in this case, incidentally, was also untimely, as for the state causes of action in this case. But you had a pretty good idea of what the case was going to be once you got the notice of claim, didn't you? The county had a general idea, as Judge Spatz said in his decision, of what the circumstances were that night. But actually, that notice of claim failed to name any officers. The county was a bit hamstrung in their ability to investigate. And I would also add... Do you know it was Detective Archibald who might be a defendant in that case? In the 1983 case? That's true. But what's alleged in the complaint... You usually have an argument like this when there's five responding officers go to a scene of a domestic or something and there's excessive use of force and you don't know which of the five officers are going to be defendants in the case. You don't really know their roles in the incident, right? Here's just one police detective who's a neighbor of the Tolchins, who was the basis for the arrest warrant against him, right? This is, again, actually, according to the complaint, the plaintiff didn't even know that Ms. Archibald was an officer. She was the complaining witness in this case. I am the police. The causes of action that were asserted in the complaint have to do with false arrest, false imprisonment, excessive force. None of those claims would have been against her, specifically. It would have been the officers who arrived at the scene on that day, and perhaps the officers that took her in. So only because he broke his ribs, he wasn't making a claim against her? There was a claim against her as well, but for a number of the officers that most of the claims would have pertained to, to this day, they still would have no notice of this action. Also, the notice of claim The complaint just identifies her by name, right? But it does identify her by name. It does identify her by name, but she also, individually, was never made aware of this complaint until 16 months after she ought to have been served. Your Honors, I do want to point out also, in terms of the prejudice not just to the county, but also with respect to those John Doe officers, this Court noted in Zapata, first of all, that it's up to the district court, the trial court, who hears the facts and understands the case, to determine if there would be prejudice to those individuals and to the county given the circumstances of the case. Judge Spat made that determination. He weighed the different prejudices. There was a 16-month delay here. And in Zapata, the Court did say, by the way, that it's obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for this action. And we were now a year and a half beyond the limitations period. And the Court added in Zapata that's especially true if the defendant had no actual notice of the complaint. And none of the defendants had any notice of the complaint for 16 months. As a final thought, Your Honors, in this case, or I should mention in Zapata, the Court said even where the hardships might, in fact, tip in favor of the plaintiff, when there's an opportunity, when it should be noted that no weighing of the prejudices between the two parties can ignore the fact that the plaintiff created the situation. And that was the case here. And Judge Spat carefully looked at all the prejudices all around and determined that the case should be dismissed accordingly. Thank you, Your Honors. Just a few points. It's my understanding that the assault against our client, the criminal action was sealed is not, in fact, true. Because, in fact, in this case, Detective Archibald had actually initiated a civil suit against both plaintiffs for the allegations that she alleged assault against them. And that was done during the pendency of the criminal proceeding. And that matter was unsealed as a result of that civil action. Additionally, with respect to the John Doe officers, obviously, given that the fact the complaint was filed with just two days to the statute of limitations, it was unlikely we would be able to amend to include any additionally named defendants. So the waiver of any additionally named John Doe police defendants wouldn't be prejudicial to either any side. So, that's all I have. Thank you. Thank you both. We'll reserve decision.